(No. 64776

*In re* WALWYN MARSHALL TREZISE, JR.,
Attorney, Respondent.

*Opinion filed October 5, 1987.—Rehearing
denied December 1, 1987.*

CUNNINGHAM, J., took no part.

Daniel Drake, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

Walwyn Marshall Trezise, Jr., of Fairbury, respondent

*pro se.*

JUSTICE MORAN delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission filed a complaint before the Commission charging the respondent, Walwyn Marshall Trezise, Jr., with professional misconduct tending to bring the courts and the legal profession into disrepute. The complaint alleged that the respondent executed a trustee's deed conveying certain property he held for the benefit of one of his clients while a citation order was in effect which prohibited his client from transferring that property. A panel of the Hearing Board found that the respondent did not intend to defraud anybody, to misrepresent, or to conceal anything from the court, but that he was "guilty of an almost total lack of care" in connection with the transaction and that his conduct was prejudicial to the administration of justice and brought the courts and the legal profession into disrepute. The panel recommended that the respondent be suspended from the practice of law for two years or until further order of this court, that the order of suspension be stayed in full, and the respondent be placed on disciplinary probation subject to the conditions that he report periodically to the Administrator and pay the costs of these proceedings. (107 Ill. 2d Rules 772(b)(1), (b)(10).) The Administrator filed exceptions to the Hearing Board's recommendation that the suspension be stayed and the respondent placed on probation.

The Review Board affirmed the Hearing Board's findings of fact, but concluded that the respondent was not eligible for disciplinary probation. A majority of the Review Board found that a two-year suspension was excessive and, instead, recommended that the respondent be suspended from the practice of law for six months. Two members of the Review Board recommended a two-year

suspension. The respondent filed exceptions to the report and recommendation of the Review Board. (107 Ill. 2d R. 753(e)(5).) Thereafter, we allowed the Administrator's petition for leave to file exceptions. 107 Ill. 2d R. 753(e)(6).

The issues presented for review are: (1) whether the Administrator engaged in prejudicial conduct by making misleading representations before the Hearing Board and the Review Board; (2) whether disciplinary probation pursuant to Rule 772 (107 Ill. 2d R. 772) is an appropriate sanction under the circumstances of this case; and (3) what measure of discipline, if any, should be imposed upon respondent.

The respondent is a sole practitioner who was licensed to practice law in Illinois in 1962. In a separate proceeding, on June 3, 1983, this court censured respondent for failing to disclose an addendum to a settlement agreement during divorce proceedings which took place in Livingston County in 1973. *In re* Trezise (1983), No. M.R. 3021.

The respondent has represented Dean Koehl since approximately 1969. In 1975, Koehl, who had been estranged from his wife since 1971, became involved with Jeanne Lawrence. Shortly thereafter, Lawrence moved into a house in Decatur which was then owned by the L & K Sales Corporation. At that time, Koehl was the president of L & K and the respondent was its secretary. On October 15, 1975, the respondent executed a land trust agreement which an associate had drafted. Under the terms of the trust agreement, the respondent was to take title to the Decatur property in trust for the benefit of Dean Koehl throughout his natural life and to distribute the remainder in fee simple to Jeanne Lawrence upon Koehl's death. The agreement also provided that Koehl had the power to revoke or amend the trust or otherwise direct the respondent as to the disposition of

the trust property. The trust agreement further provided that the respondent was to "deal with [the trust property] only when authorized to do so in writing" by Koehl or whomever else was then designated the beneficiary. The L & K Sales Corporation conveyed the property to the respondent as trustee on November 7, 1975. On March 12, 1976, respondent, as trustee, executed a certificate of beneficial interest which purported to transfer to Jeanne Lawrence a 100% beneficial interest in the land trust subject to Koehl's life estate.

Thereafter, respondent prepared financial statements for Koehl and for the L & K Corporation for 1979, 1981 and 1982, all of which listed the Decatur property as one of Koehl's personal assets. The respondent appended a letter to the 1979 financial statements stating that they were prepared in accordance with generally accepted accounting practices and fairly and accurately represented Koehl's financial position. L & K Corporation obtained loans and a loan extension from the Anchor State Bank in 1981 and 1982.

Koehl executed the promissory notes as a co-maker, and signed the loan extension agreement as an endorser. On July 26, 1982, L & K Corporation filed a petition for bankruptcy. At that time all debts L & K owed to the Anchor State Bank became due pursuant to a loan guaranty agreement Koehl had executed in 1980. On April 4, 1983, the bank recovered a judgment against Koehl in the amount of $117,235.43 in the circuit court of McLean County.

Thereafter, the bank initiated supplementary proceedings to collect the judgment, and a citation to discover assets was served upon Koehl on June 3, 1983. The citation prohibited Koehl from transferring or disposing of any nonexempt property until further order of the court or until the proceedings were terminated. The respondent appeared and represented Koehl in the citation pro-

ceedings. Respondent provided the bank's counsel with a copy of the trust deed for the Decatur property in June 1983. After two changes of venue, Koehl first appeared and was examined on October 19, 1983. At that time, he was asked to produce certain records relating to the Decatur property; and, the citation was continued by agreement until March 7, 1984.

In the latter part of December 1983, Lawrence and a real estate broker telephoned respondent and informed him that Lawrence intended to sell the Decatur property. Lawrence verbally directed respondent to execute a trustee's deed. On January 6, 1984, prior to the termination of the citation proceedings, respondent executed a trustee's deed conveying the Decatur property to the purchasers in consideration of $51,000. Koehl directed the purchasers' mortgagee to pay the net proceeds from the sale to Lawrence. Lawrence received $14,334.50 at the closing.

On May 21, 1984, the circuit court ordered respondent to show cause why he should not be held in contempt and sanctioned in accordance with section 2—1402 of the Code of Civil Procedure (Ill. Rev. Stat. 1983, ch. 110, par. 2—1402). Following a hearing on June 20, 1984, the court found that respondent was not, himself, enjoined from conveying the Decatur property and dismissed its show cause order. Nevertheless, the court found that respondent "violated his obligations as an officer of the Court when, without taking any steps to inform the Court that Mr. Koehl was about to violate the terms of the injunction, he participated in helping Mr. Koehl to violate the terms of that injunction and transfer the property." The court then directed the court reporter to furnish a transcript of the hearing and copies of the exhibits introduced to the Attorney Registration and Disciplinary Commission.

Anchor State Bank appealed the circuit court's refusal to enter sanctions. The appellate court, in an unpublished Rule 23 order (131 Ill. App. 3d 1171), affirmed, but noted:

"[I]t is incumbent upon us to note that the conduct of the attorney—who is the true defendant in this appeal—is of a nature that can best be called questionable. In our opinion, it is conduct of this nature which has, to a great extent, brought the legal profession in this state and country to disrepute and made it the subject of castigation by the consuming public. In light of this, we reach our decision affirming the trial court with a great deal of trepidation, but find that we are nonetheless compelled to it by application of the statutory and common law of this state."

The Administrator filed his complaint on January 22, 1986. Respondent failed to answer the complaint within the time provided by Commission Rule 231, and the Administrator moved to have the allegations of the complaint admitted pursuant to Commission Rule 236. The Hearing Board granted the motion and deemed all the allegations of the complaint admitted except those allegations pertaining to code violations and the allegation that the respondent's conduct tended to bring the courts and legal. profession into disrepute. Three days before the hearing, the respondent filed his answer without first obtaining leave to file. During the course of the hearing it became apparent that respondent was not adequately prepared to represent himself before the Hearing Board. When asked whether he had taken an opportunity to read the Commission's rules for practice before the Hearing Board, respondent replied, "No, sir, I haven't." The Hearing Board noted in its report that:

"Respondent appeared to lack appreciation of the significance of the current proceedings by his failure to timely file an answer to the Complaint, by his apparent failure to make himself familiar with the procedural rules

governing the proceedings before the Hearing Board, and by his general lack of preparedness to defend himself on the hearing before this Board."

Respondent testified before the Hearing Board that he received a letter from Koehl in 1976 in which Koehl indicated that his wife refused to grant him a divorce. Koehl's letter instructed respondent to "go ahead and fix the property in Decatur like you suggested so that if anything happens to me Jeanne [Lawrence] will at least get the house." Respondent then executed the certificate of beneficial interest by which a 100% beneficial interest was purportedly transferred to Lawrence. Respondent testified that he believed this transfer vested Lawrence with a fee simple interest in the property and the power to direct him to sell it. Although he admitted that he did not have a copy of the land trust agreement in his files at that time, respondent testified that he also assumed that Lawrence was a beneficiary of the land trust. Respondent further testified that when he executed the trustee's deed, he believed that the Decatur property belonged to Lawrence and that Koehl had no interest in either the land trust or the trust property and that Lawrence had the power of direction. Finally, respondent testified that after Lawrence and her real estate broker contacted him concerning the sale, he received a written power of direction from Lawrence and conveyed the property pursuant to that direction. Our review of the record before us, however, disclosed no such document.

Respondent testified that he was under a great deal of stress when the transaction in issue took place. According to his testimony before the Hearing Panel, respondent's wife had been in Oklahoma caring for her terminally ill mother. In her absence, respondent was caring for their three teenage children. During the last two weeks in December 1983, respondent traveled to

Oklahoma. Respondent executed the trustee's deed when he returned to Illinois for three days in January 1984 to accompany his daughter to Oklahoma to attend the funeral of his wife's mother. Respondent testified that he was at the funeral while the closing took place. In his closing argument, respondent stated that this court's previous censure has also caused him great anxiety, and that the present proceedings have caused him to seek help from a therapist. There was no evidence in the record, however, concerning the respondent's condition or treatment.

Respondent further stated that he did not profit from the transaction in question and that the bank suffered no actual loss. Finally, respondent argued that suspension is unwarranted. Respondent told the Hearing Panel that his only source of income is from his sole practice in a town of less than 3,000 people. He stated that his wife has since divorced him and that he is her sole source of support as well as the sole source of support for his three children and grandchild. Therefore, he argued, a suspension would work a grave hardship upon his dependents.

We first address the question of whether the Administrator engaged in prejudicial conduct by making misrepresentations before the Hearing Board and the Review Board. Respondent first claims that counsel for the Administrator argued that the land trust was designed to deprive Koehl's lawful wife of her marital interest in the Decatur property. The transcript of the proceedings before the Hearing Panel, however, clearly and unequivocally shows that counsel for the Administrator informed the panel that the Administrator neither alleged nor intended to prove a fraud upon Koehl's wife. Respondent also submits that during his rebuttal argument before the Review Board, counsel for the Administrator argued the respondent knew of Koehl's involvement with the

sale of the property. Nothing in the record before us supports respondent's argument. Notwithstanding respondent's assertions of error, the Hearing Board found, and the Review Board concurred, that the respondent did not intend to defraud anybody or to misrepresent or to hide or keep anything from the court. Nevertheless, respondent maintains that counsel for the Administrator created an inference that he intended to deceive or had knowledge of deception and that such an inference was prejudicial. We find respondent's argument to be without merit.

Next, respondent contends that the Review Board erred in concluding that he was not eligible for disciplinary probation. Rule 772 provides:

> "The court may order that an attorney be placed on probation if the attorney has demonstrated that he:
>
> * * *
>
> (3) has a disability which is temporary or minor and does not require treatment and transfer to inactive status." (107 Ill. 2d R. 772.)

The Hearing Board concluded that the "Respondent has demonstrated that he has the qualifications to entitle him to probation as required by Supreme Court Rule 772." The Board did not, however, specify what these qualifications were. Respondent submits that the Hearing Board's conclusion is supported by the evidence that he had been under emotional stress before and at the time of the transaction underlying these proceedings and that he had been undergoing counseling to deal with depression, anger and his deteriorating marital situation. The Administrator, on the other hand, maintains that Rule 772 places the burden upon the respondent to prove by clear and convincing evidence that he has a disability which is temporary or minor, and that the respondent has failed to do so in this case. The Administrator contends that the record does not establish any

evidence of a mental problem, addiction or other disability.

Respondent argues that the Administrator's interpretation of Rule 772 is too narrow. Respondent concedes that the decisions underlying the adoption of Rule 772 involved attorneys suffering from alcoholism. (See *In re Chapman* (1983), 95 Ill. 2d 484; *In re Driscoll* (1981), 85 Ill. 2d 312.) Nevertheless, he submits that the rule envisioned a broader scope of disabilities than alcoholism. According to the respondent's interpretation, this court intended Rule 772 to address cases involving other disabilities which affect an attorney's judgment. He contends that the emotional strain and depression from which he was suffering at the time of the transaction in issue affected his professional judgment to the extent that he was disabled. Therefore, he concludes, the Hearing Board's recommendation that he be placed on supervised disciplinary probation was appropriate.

On the facts in the record before us we decline respondent's invitation to broaden the scope of Rule 772 to apply to cases in which an attorney alleges that he was under emotional stress. The practice of law, by its very nature, is often stressful. We are not unmindful of the fact that personal and family problems can and do cause additional stress. Respondent testified briefly as to the circumstances causing his emotional difficulties. During his closing argument, he informed the Hearing Panel that he sought help from a therapist. There is no evidence in the record, however, concerning the precise nature of his condition or his treatment. Consequently, even if we were to hold that emotional stress constitutes a "disability" within the scope of Rule 772(a)(3), respondent has failed to sustain his burden of providing such a disability by clear and convincing evidence as required by Rule 753(c)(6). Accordingly, we conclude that probation is not appropriate under the facts of this case.

Finally, we must consider what measure of discipline is warranted. Respondent submits that the Review Board, having concluded that the Hearing Board's recommendation of a two-year suspension was excessive, erred in recommending a six-month suspension. Respondent maintains that because he is a sole practitioner with five dependents and derives his income solely from his practice in a community of 3,000 people, a six-month suspension without probation is more severe than a two-year suspension stayed subject to probation. The Administrator contends that respondent's proven misconduct warrants a two-year suspension. In support of this contention, the Administrator notes that the Hearing Board found the respondent "guilty of an almost total lack of care." Accordingly, the Administrator maintains that the length of the suspension imposed must turn on the harm or the unreasonable risk of harm caused by respondent's lack of care. The Administrator submits that the evidence shows that Lawrence received the proceeds from the sale of the Decatur property when the Anchor State Bank was entitled to receive those funds. In response, respondent argues that the uncontradicted testimony shows that Koehl settled his dispute with the Anchor State Bank and that the bank did not sustain any financial loss as a result of the sale of the Decatur property.

The Administrator further argues that there is no evidence in mitigation. Rather there is only evidence of aggravating circumstances. The Administrator notes that the respondent engaged in the misconduct underlying this action only seven months after this court censured him for his failure to disclose an addendum to a divorce settlement agreement. The respondent notes, however, that the misconduct underlying that censure occurred 11 years before the transaction now in issue.

Respondent further argues, in mitigation, that he received no financial benefit from the transfer and that he

acted under what he believed to be a duty to Lawrence. Furthermore, he notes that at the time he executed the trustee's deed, more than six months had passed since the citation proceedings were instituted, that no order had been entered following the hearing on the citation, and that he and counsel for the bank believed the proceedings had terminated. Finally, the Administrator notes that both the Hearing Board and the Review Board found that the respondent "appeared to lack appreciation of the significance" of these proceedings.

Although uniformity in discipline is desirable, every case must be considered on its own merits. (*In re Andros* (1976), 64 Ill. 2d 419, 425-26.) In this case we agree with the Hearing Board's finding that respondent was guilty of "an almost total lack of care" in transferring the Decatur property. We also agree with the finding that the "Respondent appeared to lack appreciation of the significance of the current proceedings." Moreover, we note that the current misconduct occurred only seven months after this court censured him. Therefore, respondent is suspended from the practice of law for nine months.

*Respondent suspended.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.