(No. 64622.

*In re* SAMUEL FREDERIC FREIMAN, Attorney, Respondent.

*Opinion filed October 5, 1987.—Rehearing denied December 1, 1987.*

CUNNINGHAN, J., took no part.

Peter L. O'Reilly, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

William J. Harte, Ltd., of Chicago (William J. Harte

342

and David J. Walker, of counsel), for respondent.

JUSTICE WARD delivered the opinion of the court:

A panel of the Hearing Board of the Attorney Registration and Disciplinary Commission has recommended that Samuel F. Freiman, who was admitted to practice in Illinois in 1972, be censured for professional misconduct. On review five members of the Review Board of the Commission recommended that he be suspended from the practice of law for one year and two members recommended suspension for six months.

The respondent represented Dianne Lagona on a personal injury claim on which a settlement was negotiated. The concerned insurance carrier issued a settlement draft in August 1981, which the respondent, on September 17, 1981, deposited in his "special funds account." On the same date he drew a check on the account in favor of Ms. Lagona for $3,720, which represented her net share of the settlement. Because of various withdrawals from the account by December 1981, the balance in the account fell below $3,720. For some reason not shown in the record, Ms. Lagona did not deposit her check until September 1982, and when she did it was dishonored because of insufficient funds in the account. In July 1983, she filed a complaint with the Commission, and in the summer of 1984 the respondent, through a loan from his father, paid the client $3,720. In July 1986, through another loan from his father, the respondent paid Ms. Lagona the amount of interest the settlement amount could have earned in interest had it been paid promptly to the client.

The Administrator of the Commission charged the respondent with conversion of the client's funds, with failure to preserve the identity of the client's funds and prejudicing or damaging the client during the course of a professional relationship. In answering the complaint the

respondent admitted its factual allegations but stated that the misuse of the client's funds was inadvertent and unintended. Thus, the issue became whether or not the complained-of conduct of the respondent was intentional.

The respondent testified that the first time he learned that his client's check was not honored was in August 1983, when she filed a complaint with the Commission. When he realized that Ms. Lagona had not been paid, he borrowed the money from his father to do so. He delayed in borrowing the funds for almost four months because of the embarrassment of disclosing to his father that "he was broke." The payment of the sum the client could have earned in interest was made approximately three months after the date the Hearing Board opinion was issued.

Until 1982 only funds of clients and Internal Revenue Service withholding taxes were deposited in the respondent's special funds account. Early in 1982 the respondent's bank, to satisfy a garnishment which the bank had received, withdrew funds from this special funds account. When the respondent notified the bank that the account was a trust account and not subject to garnishment, the bank restored the funds to the account. Upon returning the improperly garnished money from the account the bank renamed the account "client's fund account" so that improper garnishments would not again occur.

During this period the respondent's arrearage for rent for his office reached more than $7,000 and the management company and he made an agreement for him to satisfy that balance in installments. When in May 1982 he received a fee of $8,325, he offered the entire fee to the management company to satisfy the rental obligation, but the company wished to have payments made pursuant to their agreed-upon payment schedule. To insure that funds would be available for these rental

payments the respondent deposited the $8,325 in the client's fund account. This was apparently done to shield the money from garnishment. The respondent acknowledged that, beginning then, he paid approximately $12,000 out of the client fund account to satisfy his rental obligations.

An evidence deposition of the respondent's secretary was admitted as character evidence, and there was good-character testimony from an employee of the Secretary of State of Illinois.

The hearing panel found that during the time involved the respondent was in serious financial difficulty and found there was clear and convincing evidence that the respondent had commingled personal funds with those of a client and failed to preserve the identity of the client's funds. The panel concluded that the respondent's reputation was good and that there was no evidence of any impropriety except for this matter. The panel judged that the Administrator had not sustained the burden of establishing by clear and convincing evidence that the conduct of the respondent was intentional. In doing this the panel did acknowledge it was difficult to believe that the respondent did not know that, when he had disbursed approximately $12,000 for personal expenses, he had deposited only $8,300 into his client's fund account. The members of the Review Board in their report and recommendation stated that they could not concur in the panel's finding that the Administrator had not shown misconduct by clear and convincing evidence. The Board stated that the respondent must have been aware that the balance in the client's fund account had fallen below $3,720, the amount of the outstanding check in favor of his client. The hearing panel found that in December 1981 the balance had fallen below that amount and the Review Board could not believe that in January 1982, when the client account was im-

properly garnished, the respondent did not know there had been a conversion of his client's money. The Board noted that the respondent was obviously calculating in placing his professional fee of $8,300 into the client's fund account to protect it from creditors and thus to enable him to satisfy his rent arrearages. The Board said it was incredible to believe that when he paid approximately $12,000 in rent and rent arrearages he did not know that he was expending approximately $3,700 more than he had deposited in the account, which happened to be the amount, $3,700, owed to Ms. Lagona. All of this was against a background of the respondent's serious financial condition. There had been civil judgments entered against him and garnishments taken against his personal accounts.

We consider that the Review Board's analysis that the record showed clear and convincing evidence of the respondent's intentional misconduct was correct. Motive and intent typically are established by inference. As this court, citing Wigmore on Evidence, has put it: "Motive and intent are rarely the subject of direct testimony; they must ordinarily be inferred from conduct and from the circumstances under which that conduct took place." (*In re Schwarz* (1972), 51 Ill. 2d 334, 336.) It is clear that the commingling of the funds and the improper use of the client's funds were intentional acts. That the client was prejudiced and suffered loss because of the inordinate delay in receiving the funds to which she was entitled is unquestioned.

Considering the totality of the circumstances, we consider that suspension from the practice of law for four months will be an appropriate sanction.

*Respondent suspended.*

JUSTICE CUNNINGHAM took no part in the consideration or decision of this case.