(No. 67041.-

*In re* NICHOLAS T. KITSOS, Attorney, Respondent.

*Opinion filed January 18, 1989.—Rehearing denied April 3, 1989.*

2

CALVO, J., took no part.

Thomas P. Sukowicz, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Nicholas Theophilos Kitsos, of Chicago, respondent

*pro se.*

JUSTICE MILLER delivered the opinion of the court:

On February 25, 1987, the Administrator of the Attorney Registration and Disciplinary Commission (the Administrator) filed a one-count complaint charging the respondent, Nicholas T. Kitsos, with commingling and conversion of client funds and with illegal conduct involving moral turpitude, dishonesty, fraud, deceit, and misrepresentation. The charges alleged that the respondent had taken as his fee, without authorization from his clients, interest earned in a client escrow account. A panel of the Hearing Board found that the respondent had engaged in the conduct as charged and recommended that the respondent be suspended from the practice of law for one year. Both the Administrator and the respondent filed exceptions to the Hearing Board's report and recommendation. A majority of the Review Board concurred in the findings of fact and conclusions of law of the Hearing Board but recommended that the respondent be suspended for a period of six months; one member of the Review Board disagreed with a number of the findings of misconduct and recommended that the respondent be reprimanded. The respondent has filed exceptions to the recommendation of the Review Board. See 107 Ill. 2d R. 753(e)(5).

The sole controversy in this case is whether the respondent was authorized to retain the interest accrued upon an escrow account as his fee. The respondent contends that the allegations of misconduct were not proved by clear and convincing evidence. A brief recitation of the facts underlying this dispute is warranted in light of the respondent's challenge to the sufficiency of the evidence.

The respondent began representing the clients in question, William and Neta Lawson, in 1972, following

the death of his brother, who was also an attorney. At that time the Lawsons were involved in a dispute concerning a real estate contract. In 1974 the respondent filed suit on behalf of the Lawsons, as purchasers, seeking specific performance of the contract. The suit remained pending for more than two years. In September 1976 the respondent entered into an agreement to settle the dispute. The settlement provided that the Lawsons would deposit $13,500 into an escrow account pending transfer of title.

On September 17, 1976, in accordance with the settlement agreement, the respondent established a deed and purchase money escrow account with the Chicago Title and Trust Company (Chicago Title) and deposited $13,500 in the account. More than two years later, on April 24, 1979, an escrow administrator at Chicago Title wrote to the respondent and to the sellers' attorney seeking information about the account. The letter writer noted that the account had been inactive since its inception in September 1976 and requested information on the status of the escrow. In response to the escrow administrator's letter, the respondent wrote to Chicago Title on May 17, 1979, directing that the escrow funds be deposited in an interest-bearing account and that the interest earned on the funds be retained in the same account. The same day, the respondent wrote to the Lawsons to advise them of his action, enclosing with his letter a copy of the escrow administrator's inquiry.

On December 31, 1981, the respondent sent a letter to Chicago Title notifying the company of a change in his office address and requesting a statement "showing to date the funds and the amount that are on hand subject to my direction" in the Lawsons' escrow account. The respondent subsequently learned that the account contained $17,225.30. That sum apparently represented the initial deposit of $13,500 and $3,725.30 in accrued in-

terest. On January 15, 1982, the respondent submitted to Chicago Title a document entitled "Amendatory or Supplemental Instructions to Be Attached to Escrow Trust Agreement" pertaining to the disposition of the interest in the account. The amendatory/supplemental instructions directed Chicago Title to deduct $1,055 from the funds and to pay that amount to itself as an investment fee, to retain $291.21, in addition to the principal sum, in the account, and to pay $2,379.09 to the respondent. A notation on the document represented that the Lawsons had approved the instructions. Soon after that the respondent received a check for $2,379.09, as he had requested, and he negotiated the check and retained the proceeds for his own benefit.

In February 1984 the respondent submitted to Chicago Title a second set of amendatory/supplemental instructions, which directed the company to pay to the respondent $1,774.15, less any unpaid investment fee. On February 20, 1984, the respondent received a check for $1,654.15, and he negotiated the check and retained the proceeds for his own benefit. In May 1984 the respondent directed Chicago Title to pay him any amount in the escrow account in excess of $13,500. The respondent did not receive any additional funds, however, for by this time the Lawsons had advised Chicago Title that the respondent was no longer their attorney and had specifically directed the company not to transmit any money to the respondent. The respondent received a total of $4,033.24 in the two disbursements from the clients' escrow account.

Before the Hearing Board panel, Mr. Lawson testified that in 1976 he gave the respondent $13,500 to be placed in an interest-bearing escrow account. At the time the account was established, the Lawsons were living in Chicago. Soon after that, they moved to Arkansas, where they resided at the time of the hearing. Mr.

Lawson explained that he had assumed that the escrow money was originally deposited in an interest-bearing account and that he did not learn otherwise until 1979, when the respondent informed him that the money had been transferred to an interest-bearing account. Mr. Lawson wrote to the respondent in March 1984 to inquire about the interest in the escrow account, but his letter was returned unopened. Mr. Lawson later telephoned the respondent, but the respondent did not provide any information about the interest. Mr. Lawson then retained a different attorney to investigate the matter, and he subsequently learned that the respondent had withdrawn money from the escrow account on two separate occasions. Mr. Lawson also stated that he never received copies of the respondent's amendatory/supplemental instructions and that he never spoke with the respondent on the telephone about any fee arrangement. Mr. Lawson maintained that he never authorized the respondent to withdraw interest from the escrow account in payment of his fee. According to Mr. Lawson, the only bill he received from the respondent was one for about $875 in 1975, for a retainer and certain costs; the Lawsons paid the bill promptly. Mr. Lawson said that he would have paid any additional bill but that he never received a statement of an outstanding fee.

Mrs. Lawson also testified before the Hearing Board panel, corroborating her husband's testimony. She stated that she and her husband never received copies of any of the additional escrow instructions, never received any bills or statements of their account, and never authorized the respondent to withdraw funds from the escrow account.

The respondent testified that in 1975, when he filed suit on behalf of the Lawsons, he sent them a bill for about $875, which represented a retainer fee of $650 and an additional amount for certain advanced costs.

The respondent admitted that the 1975 bill was the only bill he ever sent the Lawsons. The respondent further testified that sometime during 1979 he contacted the Lawsons by telephone. According to the respondent, during this discussion it was agreed that he would withdraw the interest accumulated in the escrow account and retain it as his fee. The respondent conceded that he never executed a document confirming the fee arrangement and never sent the Lawsons a written accounting.

The Hearing Board panel found that although the respondent may have been entitled to additional fees for his services, he was under a duty to advise his clients of the amount owing. The panel also found that the respondent was obligated to inform the Lawsons of any amendments to the terms of the escrow agreement. The panel concluded that the respondent had engaged in illegal conduct involving moral turpitude, in violation of Disciplinary Rule 1—102(a)(3) (107 Ill. 2d R. 1—102(a)(3)); conduct involving dishonesty, fraud, deceit, or misrepresentation, in violation of Disciplinary Rule 1—102(a)(4) (107 Ill. 2d R. 1—102(a)(4)); commingling, in violation of Disciplinary Rule 9—102 (107 Ill. 2d R. 9—102); and conversion. The Hearing Board panel recommended that the respondent be suspended from practice for one year.

A majority of the Review Board concurred in the findings of fact and conclusions of law of the Hearing Board but recommended that the respondent be suspended for a period of six months. One member of the Review Board recommended a sanction of reprimand, finding proof only of the respondent's failure to account to his clients for sums taken from the escrow account.

The respondent contends that the burden of proof was not properly placed on the Administrator and that the charges of misconduct were not proved by clear and convincing evidence. There is no dispute that in discipli-

nary proceedings the Administrator must prove the allegations of the complaint by clear and convincing evidence. (*In re Rosin* (1987), 118 Ill. 2d 365, 378; *In re Woldman* (1983), 98 Ill. 2d 248, 254; 107 Ill. 2d R. 753(c)(6).) Contrary to the respondent's argument, however, we conclude that the applicable standard was met in this case.

At the outset, we reject the respondent's argument that Disciplinary Rule 9—102, · Preserving Identity of Funds and Property of a Client (107 Ill. 2d R. 9—102), has no application here because the interest earned on the escrow account did not belong to the clients in whose behalf the account had been established but belonged instead to Chicago Title as the escrow agent, or to the respondent himself. The respondent cites no authority in support of this proposition. Moreover, the respondent's contention is belied by the explanation he gave in his May 1979 request that the escrow account be made interest bearing. At that time the respondent instructed Chicago Title, "Kindly place the funds deposited with you in an interest bearing account, so that my clients, Mr. & Mrs. Lawson[,] obtain interest on these funds, if that has not been done already." Indeed, since that time the respondent has regarded the accrued interest in the account as funds of his clients, for he repeatedly looked to the account in satisfaction of the fee he believed they owed him.

Before the Hearing Board panel, the Administrator presented the testimony of the clients in question, Mr. and Mrs. Lawson. Their testimony indicated that the respondent was vested with general authority to oversee the maintenance of the escrow account, but that he had no specific authority to deduct a fee for his services from interest earned on the account. There was no express fee arrangement, and, following the Lawsons' payment of the respondent's bill in 1975 for the $650 retainer and

certain advanced costs, the Lawsons did not receive any further bill or statement of account with respect to the respondent's services. The respondent did not send the Lawsons copies of his amendatory/supplemental instructions to the escrow account, which purported to authorize the respondent to withdraw sums of accrued interest. Both Mr. and Mrs. Lawson testified that they never authorized the respondent to retain any portion of the accrued interest as his fee.

The respondent, in his testimony before the Hearing Board panel, claimed that the Lawsons had, in fact, authorized him to retain the accrued interest in the escrow account as his fee. According to the respondent, this arrangement was settled during a telephone conversation with Mr. Lawson in 1979. The respondent also stated that he had represented the Lawsons in a variety of matters for almost 12 years and that during that period he had received for his services only a retainer of $650. The respondent conceded, however, that the only bill or statement of account he ever sent to the Lawsons was one in 1975, which, he acknowledged, was paid promptly.

The dispute in this case involved a credibility question regarding authority. The Hearing Board resolved the issue against the respondent. The panel found "the Lawsons' testimony to be forthright and direct concerning the understanding of the escrow account." The panel acknowledged that the respondent may have been entitled to additional fees for his services, apart from the retainer paid by the Lawsons in 1975, but the panel questioned the respondent's failure to send the clients any further billing statements for his services. Moreover, the panel concluded that the respondent had a duty to apprise the Lawsons of any changes he made in the escrow agreement.

The hearing panel observes the testimony of the witnesses and therefore is in a superior position to make

determinations regarding credibility and to resolve conflicts in the testimony. (*In re Harris* (1982), 93 Ill. 2d 285, 295.) Accordingly, the factual findings of the hearing panel are accorded deference. (*In re Ushijima* (1987), 119 Ill. 2d 51, 56-57.) Our review of the record in this case satisfies us that the findings of fact made by the hearing panel are supported by clear and convincing evidence.

The question remains what sanction should be imposed on the respondent for his conduct in the instant case. Attorney disciplinary proceedings are intended to safeguard the public, maintain the integrity of the legal profession, and protect the administration of justice from reproach. (*In re Lenz* (1985), 108 Ill. 2d 445, 450-51; *In re Schelly* (1983), 94 Ill. 2d 234, 241.) Predictability and fairness require consistency in the imposition of disciplinary sanctions (*In re Saladino* (1978), 71 Ill. 2d 263, 275), though each case will be considered on its own facts (*In re Hall* (1983), 95 Ill. 2d 371, 375). Here, the Administrator asks that the respondent be disbarred. As we have stated, the Hearing Board recommended a one-year suspension, a majority of the Review Board recommended a six-month suspension, and one member of the Review Board, disagreeing with most of the findings of misconduct, recommended a reprimand. We are mindful that the sanctions recommended by the Hearing Board and the Review Board are simply that, recommendations. *In re Hopper* (1981), 85 Ill. 2d 318, 323.

We have consistently condemned attorney misconduct involving the commingling and conversion of client funds. (*In re Levin* (1987), 118 Ill. 2d 77, 88; *In re Young* (1986), 111 Ill. 2d 98, 103.) In view of the serious nature of that type of misconduct, we have previously held that, absent mitigating circumstances, commingling and conversion may be grounds for disbarment. *In re*

*Cheronis* (1986), 114 Ill. 2d 527, 535; *In re Woldman* (1983), 98 Ill. 2d 248, 257.

On two separate occasions the respondent converted large sums of interest that had accrued in the escrow account. The respondent's actions were in callous disregard of the interests of his clients. Throughout these proceedings the respondent has maintained that he was authorized to withdraw money from the account in payment of his fees. The testimony of the Lawsons flatly contradicted the existence of any such fee agreement, however, and there was no documentary evidence confirming such an arrangement. Even if it is assumed that the respondent was entitled to additional fees for his legal services, it cannot be said that he had the right or authority to "help himself," as it were, to the accrued interest in the escrow account. The respondent had a duty to render to the Lawsons an accounting of his services and a statement of the fees they owed him. The respondent could not simply deduct his compensation from whatever funds were within reach.

Before this court the respondent has also insisted that, apart from any fee agreement he might have had with the Lawsons, he was authorized by the escrow agreement itself to withdraw interest from the account. We do not agree with the respondent's interpretation of the escrow documents. The only evidence of a provision granting the respondent such authority is contained in the respondent's first set of amendatory/supplemental instructions to the escrow agreement. There, the respondent advised Chicago Title that interest in the account was to be held or distributed "subject to my order and direction." The Lawsons, however, were unaware of the new instructions, and did not consent to the withdrawals of interest in payment of attorney fees.

In mitigation, we note that the respondent, who was admitted to practice in this State in 1953, has no prior

disciplinary record. Moreover, although the respondent has continued to maintain that his actions were proper, he cooperated fully with the Hearing Board and the Review Board in these proceedings. In consideration of these circumstances, we conclude that the respondent should be suspended from the practice of law for a period of one year.

For the reasons stated, the respondent is suspended from the practice of law for a period of one year.

*Respondent suspended.*

JUSTICE CALVO took no part in the consideration or decision of this case.