(No. 67742.—

*In re* THOMAS M. JOYCE, Attorney, Respondent.

*Opinion filed October 25, 1989.—Rehearing
denied January 29, 1990.*

Disciplinary proceeding.

Mary K. Foster, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Thomas M. Joyce, *pro se*, and William J. Harte, Ltd.,

of Chicago (William J. Harte and David J. Walker, of counsel), for respondent.

JUSTICE MILLER delivered the opinion of the court:

On January 28, 1986, the Administrator of the Attorney Registration and Disciplinary Commission (the Administrator) filed a complaint charging the respondent, Thomas M. Joyce, with professional misconduct resulting from the improper handling of client funds. The complaint was later amended to include allegations of respondent's failure to reduce a contingent fee agreement to writing and to obtain his client's written consent to a division of legal fees. A panel of the Hearing Board found that the respondent had engaged in the commingling and conversion of client funds and in conduct involving dishonesty, fraud, deceit, or misrepresentation. The panel recommended that the respondent be suspended from the practice of law for two years. The respondent filed exceptions to the Hearing Board's report and recommendation. The Review Board concurred in the findings of fact, conclusions of law, and recommended sanction of the Hearing Board. The respondent has filed with this court exceptions to the report and recommendation of the Review Board. 107 Ill. 2d R. 753(e)(5).

Respondent argues here that he is entitled to a new hearing because the matter was heard by only two members of the Hearing Board and because the hearing panel admitted into evidence the evidence deposition of a witness that was taken while respondent was not present, either in person or by his attorney. Respondent also challenges the sufficiency of the evidence and the recommended sanction.

On July 12, 1982, respondent was contacted by John D. Raikos, an Indiana attorney, for the purpose of registering a foreign judgment. Raikos had represented Kirk

Equipment Company, the plaintiff in an action brought in Indiana State court against Heede International, Inc. On July 12, 1982, Raikos obtained a judgment in favor of Kirk Equipment in the amount of $2,916.10, plus costs. At the request of Raikos, respondent, who was a friend of Raikos, agreed to represent Kirk Equipment in the registration and collection of the judgment in Illinois. Raikos and respondent orally agreed to divide any fee received. At no time did respondent or Raikos have any written document reflecting any fee agreement with the client.

On November 18, 1982, the respondent filed a petition for registration of a foreign judgment in the circuit court of Du Page County. The petition named Linden-Alimak, Inc., as the corporation that had succeeded to the obligations of Heede International, Inc., the defendant in the Indiana action. Sometime later, Robert Kuykendall, president of Kirk Equipment, spoke with a representative of Linden-Alimak and agreed to settle the case; apparently this was done without the knowledge of either Raikos or respondent. On May 9, 1983, Linden-Alimak issued a check for $2,000 payable to "Thomas M. Joyce, As Attorney" and mailed it to respondent.

Respondent received the check from Linden-Alimak on May 11, 1983. Five days later, on May 16, respondent negotiated the check, depositing $1,800 into his account at American National Bank and Trust Company, in Chicago, and receiving $200 in cash. Respondent claims that he spoke with Raikos before negotiating the check. According to respondent, Raikos told him that Kuykendall had agreed to pay attorney fees of 60% of the entire settlement; Raikos informed respondent that 60% of the settlement amounted to $2,000 and that therefore the entire $2,000 check from Linden-Alimak belonged to Raikos and respondent as attorney fees. This was disputed by Kuykendall, who declared in a deposition that

he and Raikos did not have a formal fee agreement, and who also stated that Raikos assured him on several occasions that he would receive a portion of the $2,000 settlement.

On June 15, 1983, prior to the payment of any funds to Kirk Equipment, the balance in respondent's account stood at $136.62. On June 17, 1983, respondent issued and sent to Kirk Equipment a check for $800; a notation on the check indicated that it was for "Settlement of Heede suit." Respondent claims that he sent the check because Kuykendall threatened to report him to various agencies if he did not pay him some part of the $2,000 cash settlement. On August 26, 1983, the check was returned to Kirk Equipment because of insufficient funds in respondent's account. Kuykendall later retained another attorney to recover the amount of the unpaid check, and he eventually received a cashier's check in the amount of $800.

On January 28, 1986, the Administrator filed a complaint against respondent. On August 8, 1986, the Administrator was allowed to file an amended complaint, charging that respondent failed to reduce a contingent fee agreement to writing; failed to obtain the client's written consent to a division of legal fees; failed to maintain a separate trust account for the deposit of client funds, or in the alternative, withdrew funds from a client trust account without notifying the client; failed to maintain records of client funds received by him and to render appropriate accounts to the client regarding those funds; failed to promptly pay to a client funds to which the client was entitled; engaged in conduct involving dishonesty, fraud, deceit or misrepresentation; and converted client funds.

The Hearing Board found that the Administrator failed to establish that respondent had a duty to reduce the contingent fee agreement to writing. The Board

made no finding with respect to the charge that respondent failed to obtain the client's consent to a division of legal fees. The Hearing Board concluded that the Administrator proved the remaining charges by clear and convincing evidence. Because respondent contends that the panel's findings are against the manifest weight of the evidence, we shall review the evidence presented at the hearing.

Respondent testified at the hearing that some time prior to June 1982, John Raikos, a friend of some 27 years, informed respondent of the Kirk Equipment case and sought respondent's assistance in registering the foreign judgment. Respondent agreed to handle the matter, and he later received a letter from Raikos confirming their agreement; the letter made no mention of attorney fees. On November 18, 1982, respondent filed a petition for registration of a foreign judgment in the circuit court of Du Page County. On May 11, 1983, respondent received in the mail a check issued by Linden-Alimak in the amount of $2,000 and made payable to "Thomas M. Joyce, As Attorney." Respondent asserted that there was no letter accompanying the check.

Respondent testified that upon receipt of the check, he immediately called Raikos, who informed respondent of the settlement between Kirk Equipment and Linden-Alimak. Respondent testified that Raikos advised him that the agreement with Kuykendall provided for attorney fees of 60% of the total settlement. According to respondent, Raikos told him that the case had been settled for about $3,400 and, further, that $2,000 of the settlement amount was to be paid in cash and that the difference represented commissions that Kirk Equipment would earn in future business dealings with Linden-Alimak. According to respondent, Raikos told him that because $2,000 was about 60% of $3,400, the entire $2,000 check belonged to respondent and to Raikos in payment

of attorney fees. Respondent testified that he deposited the check into his account at American National Bank and received $200 in cash. In late June 1983, respondent issued a check in the amount of $400 made payable to John Raikos. A notation on the check reads "Kirk Equip. contingency fee."

Respondent testified that he later sent Kuykendall a check for $800 because Kuykendall had called him early in June 1983 complaining that Linden-Alimak had reneged on the settlement promise of future business. According to respondent, Kuykendall maintained that part of the $2,000 cash settlement belonged to him and threatened to complain to various agencies if he did not receive a portion of it. Respondent testified that after this conversation he sent a check in the amount of $800 to Kuykendall at Kirk Equipment. A few days later, however, respondent decided that he should not have sent Kuykendall any funds at all. Respondent therefore called Kuykendall on June 22, 1983, and told Kuykendall that he was going to stop payment on the check. Respondent claims that after the conversation he drafted a letter reiterating his position and sent it to Kuykendall at Kirk Equipment. It appears that the check was presented for payment twice, and that on both occasions it was dishonored because of insufficient funds in the account. Respondent testified that he stopped payment on the check in November 1983.

Also testifying in the respondent's behalf before the Hearing Board was Donald Meyers. Meyers said that in January 1984 he personally delivered to Kirk Equipment a cashier's check in the amount of $800. Meyers testified that the check was issued at the direction of attorney John Raikos, and Meyers said that he delivered it to Kirk as a favor to Raikos. For reasons not clear from the record, the original cashier's check was not cashed, and a second one was eventually issued in August 1984.

At the hearing, respondent admitted that he did not contribute any amount toward the $800 cashier's check and that he has never paid any portion of the $2,000 settlement proceeds to Kirk Equipment. Respondent claims that Kirk was not entitled to any funds.

Over respondent's objection, the evidence deposition of Robert Kuykendall was admitted into evidence. In his deposition, Kuykendall, the owner of Kirk Equipment, testified that he had never spoken with respondent and that he had not received any correspondence from him. According to Kuykendall, he retained John Raikos to represent him in an action against Heede International, Inc., for the nonpayment of a commission. Kuykendall stated that he never had a formal fee agreement with Raikos. Rather, Kuykendall had merely informed Raikos that he would be happy to get at least some part of the commission owed to him by Linden-Alimak. Kuykendall additionally testified that Raikos obtained a judgment in his favor of $2,916.10, plus costs, and then informed him that he was going to retain the services of respondent to register and collect the judgment in Illinois. According to Kuykendall, there was never any fee agreement with the respondent, oral or written.

About six months after the judgment was registered in Illinois, Kuykendall received a telephone call from the manager of Linden-Alimak regarding settlement of the case. During the conversation, Kuykendall agreed to accept $2,000 as settlement of the matter. In his deposition, Kuykendall did not mention, nor was he asked about, any additional consideration in the form of future business dealings with Linden-Alimak as part of the settlement. Kuykendall did not discuss the matter with either Raikos or respondent prior to accepting the settlement offer. Kuykendall later called Raikos to inform him of the settlement agreement, however. In June 1983, Kuykendall received a check from the respondent for

$800. Kuykendall testified that he did not speak with respondent prior to receiving this check, nor did he receive any accounting or financial statement from respondent.

Kuykendall identified check No. 1110, dated June 17, 1983, and drawn on the American National Bank, as the check he received from respondent. Kuykendall stated that he deposited the check in his account shortly after receiving it. The check was later returned to him because of insufficient funds. Kuykendall testified that he immediately called Raikos, who told Kuykendall that respondent was experiencing financial difficulties and that he should wait a few days and redeposit the check. Kuykendall waited as instructed and then redeposited the check, but it was again returned unpaid.

Later, Kuykendall contacted another attorney, Jack Brown, to attempt to collect part of the $2,000. Eventually, Kuykendall received a cashier's check for $800 from Raikos, and Kuykendall paid Brown a fee of $400 for the collection work. Kuykendall has not received any payments from respondent.

The Administrator introduced two exhibits in support of his claim that respondent knew that the entire proceeds of the $2,000 settlement check were not to be retained by respondent and Raikos as attorney fees. The first exhibit contained a stipulation concerning a letter written by Dan Dunham to respondent. Dunham was the attorney who represented Linden-Alimak in the Kirk Equipment Company action when the case was settled with Kuykendall. The parties stipulated that Dunham, if called as a witness, would testify that he found, in the general correspondence portion of his Linden-Alimak file, a copy of a letter he wrote to respondent. The letter was dated May 11, 1983. Respondent stipulated that Dunham would testify that he dictated and signed the original letter when the events were fresh in his mind and that, in the regular course of business, the letter

would have been mailed to respondent. Finally, respondent stipulated that Dunham would testify that the original of the letter was never returned to his office. The second exhibit introduced by the Administrator was Dunham's file copy of his May 11, 1983, letter to respondent concerning settlement of the action brought by Kirk Equipment. The letter stated that Dunham was enclosing Linden-Alimak's check for $2,000 and that the $2,000 payment was in full satisfaction of the judgment obtained by Kirk Equipment. The letter instructed respondent to hold the check in escrow until all releases were executed and satisfactions of judgment were filed in both courts. The letter indicated that respondent was to follow the procedure he and Dunham had agreed to in an earlier telephone conversation. Respondent stipulated to the admission of the document, but denied that he had received the letter and denied that he and Dunham had had the conversation referred to in Dunham's letter.

The Administrator further presented evidence that respondent's account at American National Bank was a client fund account and that respondent used the account to pay both personal and business expenses. John M. Augustine, of the American National Bank in Chicago, produced statements of respondent's account for the period from January 14, 1983, through November 29, 1983, and these were admitted into evidence at the hearing. The account was identified by American National Bank as a "Client Fund Account." Augustine explained that the account statements indicated that an overdraft fee was charged against the account in February 1983. The charge for the overdraft was rescinded two days later and the check was returned unpaid. Augustine explained that the charge was withdrawn because the account manager decided not to cover the overdraft. The statements from respondent's account contained similar overdraft notations for the months of March, May, August,

September, and November 1983. The statements further showed that on May 16, 1983, respondent deposited $1,800 into his account. On June 15, 1983, the balance in the account was $136.62. On June 17, 1983, respondent wrote check No. 1110 payable to Kirk Equipment Company in the amount of $800. This check was later returned because of insufficient funds.

In response to this evidence, the respondent testified that the account was not a client fund account but was in fact his personal and business account. According to respondent, the bank had erroneously identified it as a client fund account. Respondent maintained that the account was used for the deposit of fees, rebates, and miscellaneous income.

To rebut respondent's claim that his account at American National Bank was not a client fund account, the Administrator introduced into evidence a check, dated March 1, 1983, that had been deposited in the account. Issued to "Peters & Sons, Inc. and Thomas Joyce," the check was endorsed "[f]or deposit only to the client's fund account of Thomas M. Joyce," specifying respondent's account number. Respondent identified the accompanying signature as his own. Although respondent admitted that Peters and Sons, Inc., was currently a client of his, he insisted that it was not a client during 1983.

The Administrator also introduced into evidence a series of checks drawn against respondent's account. The checks included numerous items issued for "cash," as well as ones to the clerks of various courts, the sheriff's office, the postmaster, and other individuals. Check No. 1108, issued on June 21, 1983, was payable to John Raikos in the amount of $400. The notation on the check indicated that it was drafted for payment of a contingent fee in the Kirk Equipment case. Respondent claimed that the $400 was not the total amount paid to Raikos

for the suit but instead reflected a balance due after subtracting certain funds Raikos owed respondent.

After hearing the evidence, the panel concluded that the respondent had converted client funds and had engaged in conduct in violation of Rule 9—102(a) (commingling client funds); Rule 9—102(c)(3) (failure to maintain records of client funds and to render appropriate accounts to client regarding those funds); Rule 9—102(c)(4) (failure to promptly pay to client funds to which the client was entitled); and Rule 1—102(a)(4) (conduct involving dishonesty, fraud, deceit or misrepresentation). (107 Ill. 2d Rules 9—102(a), (c)(3), (c)(4), 1—102(a)(4).) The panel found that the Administrator failed to prove the allegations that respondent failed to reduce a contingent fee agreement to writing (107 Ill. 2d R. 2—106(c)(1)) and failed to obtain the client's consent in writing to a division of legal fees (107 Ill. 2d R. 2—107(a)). The panel recommended that the respondent be suspended from the practice of law for two years. The Review Board concurred in the findings and recommended sanction.

Before this court, respondent first contends that he is entitled to a new hearing because only two Hearing Board members presided over his hearing and because only one member of the original panel was present throughout the entire course of the proceedings. Respondent's hearing commenced on March 2, 1987, before a panel of two members of the Hearing Board. Respondent made no objection to the composition of the panel at that time. Following the presentation of evidence, the proceedings were adjourned and were subsequently continued twice. During the interim, one panel member left his position with the Board when he became a judge. On August 27, 1987, respondent agreed to allow the Administrator to appoint a new panel member, who was instructed to review the transcripts and exhibits. That

same day, an order was entered reflecting respondent's concurrence in the replacement of the outgoing panel member.

The proceedings concluded on September 22, 1987. At no time during the pendency of the matter did respondent object to the composition of the Hearing Panel. In fact, respondent stated at one point that proceeding with two members of the panel was "perfectly all right." Consequently, respondent cannot now be heard to challenge the makeup of the Hearing Board panel. See *In re Betts* (1985), 109 Ill. 2d 154.

Respondent also claims prejudice in the admission of the evidence deposition of Robert Kuykendall. On December 9, 1986, the Administrator filed notice that the evidence deposition of Kuykendall would be taken in Indianapolis on December 23, 1986. On December 18, 1986, respondent filed a motion to quash the notice of deposition. The motion to quash was allowed by the Hearing Board on January 5, 1987. At that time, the Hearing Board also granted the Administrator leave to take the deposition on or before January 31, 1987. On January 8, 1987, the Administrator filed notice that the evidence deposition of Kuykendall would be taken in Indianapolis at 1 p.m. on January 16, 1987. The deposition proceeded as scheduled. At that time Kuykendall explained that he would be unavailable to testify before the Hearing Board on certain dates in the future. Neither respondent nor his attorney was present during the deposition. Respondent maintains that his attorney appeared 45 minutes after the deposition had concluded and that there was a dispute between his attorney and the Administrator's representative regarding the starting time of the deposition.

On January 26, 1987, respondent filed notice of his intent to depose Kuykendall on February 7, 1987. The Administrator moved to quash the notice, claiming that

respondent had been given ample notice and opportunity to attend the January 16 deposition and, further, that Kuykendall had previously stated that he would not be available during the months of February and March. The Hearing Board subsequently granted the Administrator's motion and quashed the notice of deposition. Before this court, respondent contends that he is entitled to a new hearing because he was not given an opportunity to cross-examine Kuykendall.

As we have stated, the Hearing Board initially allowed respondent's motion to quash notice of the Administrator's intent to depose Kuykendall. The Administrator later rescheduled the deposition and properly gave respondent notice of the new date. The notice clearly stated the deposition was to commence at 1 p.m. The evidence indicates that respondent made no objection to the January 16 deposition. Because respondent had notice of the deposition and failed to appear at the proper time, either in person or through his attorney, it was within the discretion of the Hearing Board to admit the deposition into evidence and to refuse respondent's attempts to depose Kuykendall, who was no longer available. The Hearing Board did not abuse its discretion in admitting Kuykendall's deposition, taken January 16, 1987, or in quashing respondent's subsequent notice of his intent to depose the witness.

Respondent next contends that the Administrator failed to prove by clear and convincing evidence his commission of the misconduct found by the Hearing Board.

This court has previously stated that the Hearing Board is in a superior position to resolve factual disputes (*In re Kitsos* (1989), 127 Ill. 2d 1, 9-10; *In re Ushijima* (1987), 119 Ill. 2d 51, 56); in this respect, the Hearing Board is analogous to the trier of fact in a judicial proceeding (*Ushijima*, 119 Ill. 2d at 56, quoting *In re Hopper* (1981), 85 Ill. 2d 318, 323). The Hearing Board's de-

terminations regarding the credibility of witnesses, the resolution of conflicting testimony, and any other fact-finding judgments are, therefore, entitled to great deference. *Kitsos*, 127 Ill. 2d at 10.

The record before us is replete with contradictory testimony and evidence. The dispute whether respondent was entitled to the entire $2,000 check involved a question of fact that the panel resolved against the respondent. It found unbelievable respondent's assertions that he thought the total settlement amounted to $3,400 rather than the $2,000 represented by the settlement check, and that the $800 check respondent sent to Kuykendall, later returned due to insufficient funds, was merely "a gratuitous payment to prevent [Kuykendall] from carrying out certain threats." In direct contradiction to respondent's testimony, Kuykendall testified that he settled the case for $2,000 and that he has never spoken with respondent. The hearing panel noted that Dunham, attorney for Linden-Alimak, successor to the defendant in the Kirk Equipment action, had no reason to mislead the panel regarding the letter he sent to respondent. The panel concluded that respondent knew that at least part of the $2,000 check belonged to his client.

Moreover, respondent admits that he exercised control over the funds without consulting his client and that he never provided his client, either directly or through Raikos, with any financial statement or accounting. Finally, respondent's bank records clearly indicate that he failed to maintain a separate account for client funds and that while respondent's account contained client funds, he wrote checks for personal and business expenses, allowing the account to become overdrawn.

Our review of the evidence presented in this case reveals no reason to disturb the findings of the Hearing

or Review Boards. The Administrator proved by clear and convincing evidence that respondent failed to preserve the identity of funds and property of a client, engaged in conduct involving dishonesty, deceit or misrepresentation, and converted client funds.

The question remaining concerns the sanction to be imposed. Attorney misconduct involving the commingling and conversion of client funds is to be condemned. (*Kitsos*, 127 Ill. 2d at 10; *In re Levin* (1987), 118 Ill. 2d 77, 88; *In re Young* (1986), 111 Ill. 2d 98, 103.) As we noted in *Kitsos*, the serious nature of the misconduct may be grounds for disbarment absent mitigating circumstances. *Kitsos*, 127 Ill. 2d at 10-11.

Attorney disciplinary proceedings are intended to safeguard the public, maintain the integrity of the legal profession, and protect the administration of justice from reproach. (*In re Lenz* (1985), 108 Ill. 2d 445, 450-51.) Predictability and fairness require that there be a degree of consistency in the sanctions imposed for similar misconduct (*In re Hopper* (1981), 85 Ill. 2d 318, 324), though each case must be resolved on the facts and circumstances peculiar to it (*Ushijima*, 119 Ill. 2d at 57). In the present case, both the Hearing and Review Boards recommended that respondent be suspended from the practice of law for a period of two years.

Respondent argues that a two-year suspension is excessive. Respondent cites *In re Freiman* (1987), 118 Ill. 2d 341, in which the attorney received a four-month suspension for commingling and converting client funds. *Freiman*, however, involved several mitigating circumstances that are absent here. Unlike respondent, who denies any wrongdoing and made no restitution, the attorney in *Freiman*, who was experiencing severe financial difficulty at the time of the conversion, admitted that he used client funds for business expenses and

made full restitution, including interest on the funds he converted.

As previously noted, respondent disregarded his duty to establish a separate client fund account. Respondent also failed to provide any financial statements or accounting to his client. He simply appropriated the client's funds, claiming that he was entitled to the money as a fee for his services. Throughout these proceedings, respondent has continued to claim entitlement to the funds he converted, and he has made no effort at restitution. Instead, Kuykendall had to obtain separate counsel before he recovered any part of the $2,000 settlement, and even then the payment came from Raikos and not respondent.

In mitigation, we note that respondent was admitted to the practice of law in this State in 1977 and that he has no prior disciplinary record. Before the Hearing Board, respondent introduced evidence of his military service and his participation in civic affairs. Respondent also presented the testimony of two character witnesses, who attested to respondent's favorable reputation. In consideration of the circumstances in this case, we conclude that the respondent should be suspended from the practice of law for a period of two years, the sanction recommended by both the Hearing and Review Boards.

For the reasons stated, the respondent is suspended from the practice of law for a period of two years.

*Respondent suspended.*