(No. 65675.—)

*In re* RAYMOND EARL HARTH, Attorney,
Respondent.

*Opinion filed November 21, 1988.*

STAMOS, J., took no part.

Theresa M. Gronkiewicz, of Chicago, for the Administrator of the Attorney Registration and Disciplinary Commission.

Donald Hubert, of Donald Hubert & Associates, of Chicago, for respondent.

JUSTICE RYAN delivered the opinion of the court:

In this disciplinary proceeding, the Administrator for the Attorney Registration and Disciplinary Commission

(ARDC) charged the respondent, Raymond Earl Harth, with four counts of neglect, and with one count containing a charge of conversion of a client's funds. The Administrator recommended that the respondent be suspended from the practice of law. The Hearing Board issued its report, finding that the respondent was proven guilty by clear and convincing evidence of all of the violations charged, and recommended that he be suspended from the practice of law for three months. The respondent filed exceptions to this report and recommendation. The Review Board affirmed the findings of the Hearing Board and likewise recommended that the respondent be suspended for three months. The respondent filed exceptions in this court pursuant to Rule 753(e) (107 Ill. 2d R. 753(e)).

The respondent acknowledges neglect of the legal matters as charged. Two issues are raised: (1) Was conversion proven by clear and convincing evidence? (2) Is suspension an appropriate sanction under the circumstances of this case?

Respondent was admitted to practice in this State in 1949. The testimony shows that in 1982 one of the complainants, William Dooley, hired the respondent to obtain a modification of a child custody order. Dooley's ex-wife had recently died and the children were living in Florida with their maternal grandparents. The grandparents initiated guardianship proceedings in Florida. In September 1982 the respondent obtained an order in the circuit court of Cook County awarding custody of the two children to Dooley. Respondent informed Dooley that a Florida attorney would have to be hired to enforce the order. In November 1982, Dooley gave respondent a $500 check to hire a Florida attorney. This check initially "bounced," but cleared upon presentation a second time and was deposited in respondent's client fund account. Respondent acknowledges that between January and Au-

gust of 1983 he did nothing on the case. During this time, Dooley called respondent four to six times, receiving no response, and wrote to him twice requesting the return of the money.

In the respondent's client fund account there was Dooley's $500 and money from another client. On August 5, 1983, respondent, through a bookkeeping error, issued a check to the other client in an amount $200 in excess of what he should have paid. This caused the account to fall to $336.55. The following month the respondent discovered the error and deposited funds into the account, bringing it above $500. On September 14, 1983, the respondent returned the $500, without interest, to Mr. Dooley. Dooley claimed to have lost track of his children during the time respondent neglected the case, though they are still subject to the jurisdiction of the Florida court through the guardianship proceedings initiated there. The neglect of this matter and the handling of the client funds comprise the charges contained in count I of the Administrator's complaint.

With regard to count II, Alois Bell hired respondent to handle a dissolution of marriage proceeding. In the proceeding an order was entered directing Bell to pay $400 per month in temporary maintenance. Respondent told Bell not to pay the temporary maintenance because he would appeal the order. In August 1981, respondent filed a notice of appeal. The appellate court issued a rule to show cause requiring respondent to respond within 14 days as to why he failed to file a docketing statement. Respondent failed to file a response, and he did not file for a stay of the order for the payment of the temporary maintenance. Respondent claims that during this time there were negotiations going on which may have negated the necessity of the appeal. The appeal was dismissed for want of prosecution.

In January 1982, Bell's wife filed a petition for a rule to show cause for failure to pay temporary maintenance. Neither respondent nor Bell appeared at the hearing, and as a result, a body attachment order for Bell was issued. On respondent's motion, the attachment order was vacated and Bell was ordered to appear in February 1982. Bell was not informed until before the hearing that an attachment order had been entered or that the appeal had been dismissed. In July 1982, the dissolution of marriage order was entered, and Bell was ordered to pay $300 per month in alimony and to pay the arrearage in temporary maintenance. The Hearing Board and Review Board found that respondent neglected this legal matter, failed to properly carry out his employment contract, damaged the client during the course of their professional relationship, and counseled the client not to obey the court order.

The evidence relevant to count III of the complaint indicates that the respondent was hired in January 1983 by Kirk and Wanda Day to represent them in the purchase of an apartment building. During the June 1983 closing, the Days and the sellers entered into an escrow agreement requiring the sellers to pay the Days part of the rent proceeds. In August 1983, the sellers' attorney sent respondent a $293.36 check, representing the Days' portion of the rent owed pursuant to the escrow agreement. The respondent did not receive the check and did nothing to obtain the payment. In June and August, the Days unsuccessfully attempted to discuss the money with respondent. During this time the sellers' attorney also wrote to respondent but received no answer. In August, the Days sent the respondent a letter requesting the money they were entitled to under the escrow agreement. The respondent called the Days and stated he would get to it after completion of other pressing matters. On September 2, 1983, the Days filed a charge with

the ARDC. They eventually contacted the sellers' attorney and requested that he send them the money. On March 6, 1984, the seller's attorney paid them their portion of the escrow proceeds.

In the last count, the evidence established that in September 1982, Juanita Van Dorn retained the respondent to modify a dissolution of marriage judgment. She paid him $500 and gave respondent certain documents relating to property interests. Between November 1982 and April 1983, Van Dorn unsuccessfully attempted to contact respondent. Respondent claims that he reviewed the documents and concluded that the judgment could not be reopened. He made no attempt to communicate his findings to Van Dorn and did not return the documents to the client. The Hearing and Review Boards found that respondent neglected this legal matter and ignored repeated attempts of a client to contact him.

Several character witnesses testified on the respondent's behalf. The witnesses, two Illinois appellate court judges, a Cook County circuit court judge, a Chicago alderwoman, and a civil rights leader, testified that the respondent had an excellent reputation as an attorney. None of the witnesses were familiar with the facts that gave rise to this proceeding. Testimony also established that the respondent had a long involvement in community activities and *pro bono* legal work.

The hearing panel found that the respondent neglected his clients' interests by failing to seek their lawful objectives, failing to carry out his employment contract, and ignoring their attempts to contact him. The panel found that in connection with the present charges there was no corrupt motive or moral turpitude shown. Instead, the hearing panel found that this was an aberration in the respondent's professional life and that he did not present a danger to the community, rather, he was for the most part able, honest and conscientious towards

his clients. Also, the hearing panel found that none of his clients were egregiously damaged or prejudiced by his actions. Nonetheless, the Hearing Board recommended that the respondent be suspended for three months. The Review Board agreed with this recommendation.

The respondent concedes that his conduct was neglectful. As to the conversion charge, however, he contends that there was nothing more than a technical conversion of Dooley's funds and that the sanction should not be so harsh in light of his past record, his community service and other mitigating circumstances.

We first consider the Hearing Board's finding that respondent converted client funds. The Administrator must prove each allegation by clear and convincing evidence. (*In re Woldman* (1983), 98 Ill. 2d 248, 254; 107 Ill. 2d R. 753(c).) In review of the Hearing Board's decision this court will give considerable deference to findings of the Board, though we are not required to accept its conclusion if it is not founded on clear and convincing evidence. *In re Enstrom* (1984), 104 Ill. 2d 410, 416.

The Administrator contends that conversion was clearly established. We disagree. In disciplinary cases, when an attorney allows his client fund account to fall below the amount owed to the clients, conversion generally occurs. (*In re Ushijima* (1987), 119 Ill. 2d 51, 57; *In re Young* (1986), 111 Ill. 2d 98, 102-03; *In re Clayter* (1980), 78 Ill. 2d 276, 282.) Such a handling of client funds creates a substantial risk of harm to the client. (See *In re Cheronis* (1986), 114 Ill. 2d 527, 536; *In re Clayter* (1980), 78 Ill. 2d 276, 281.) In previous conversion cases, the attorneys were disciplined because they had either commingled the client funds with their personal accounts and then converted the funds (*In re Cheronis* (1986), 114 Ill. 2d 527; *In re Young* (1986), 111

Ill. 2d 98; *In re Clayter* (1980), 78 Ill. 2d 276), or they had grossly mismanaged the books so as to put the client funds in jeopardy (*In re Lewis* (1987), 118 Ill. 2d 357; *In re Grant* (1982), 89 Ill. 2d 247, 253).

The instant case is different than others which the court has addressed. In this case there was no commingling with respondent's own funds, nor was there any use of Dooley's money by the respondent. Instead, there was a negligent overpayment of the account, which was immediately corrected before any damage was done or before anyone became aware of the error. Such sloppy bookkeeping creates a potential for harm to the client, but this can at most be characterized as a technical conversion of funds which was neither intentional nor grossly negligent. (See *In re Lewis* (1987), 118 Ill. 2d 357.) Therefore, conversion has not been established by clear and convincing evidence.

We next turn to the question of the appropriate sanction to be imposed. Although the recommendations of the Boards are given consideration and are often followed, the final responsibility for determining the appropriate sanction rests with this court. (*In re Kink* (1982), 92 Ill. 2d 293, 301-02.) Each disciplinary case is unique and must be evaluated in light of its own facts, though consideration is given to the sanction imposed in cases with similar facts. *In re Winn* (1984), 103 Ill. 2d 334, 337.

The Administrator contends that suspension is appropriate because there have been serious breaches of the Code of Professional Responsibility such as conversion, neglect and failure to respond to clients' attempts to contact the respondent. In view of our holding above, we eliminate conversion in determining the sanction. The Administrator cites a number of cases in which neglect has resulted in suspension of the attorney. (*In re Levin* (1979), 77 Ill. 2d 205; *In re Chapman*

(1978), 69 Ill. 2d 494; *In re Taylor* (1977), 66 Ill. 2d 567.) In *Levin*, the attorney received a three-month suspension when his neglect resulted in the dismissal of his client's apparently meritorious personal injury action. The court cited no mitigating factors and in fact stated that there were other examples of handling cases which "would scarcely merit accolades." *In re Levin* (1979), 77 Ill. 2d 205, 209.

*In re Chapman* (1978), 69 Ill. 2d 494, involved an attorney who failed to prosecute three appeals. One client was denied an appeal though the other two were not damaged. Evidence indicated that as to one client respondent's conduct involved a misrepresentation. After noting that it was the first time the respondent had been charged in a disciplinary proceeding and that he had been ill and had domestic difficulties, he was suspended for three months.

In *In re Taylor* (1977), 66 Ill. 2d 567, the attorney had been hired in three matters, but took virtually no action in them. Respondent was suspended for one year after the court found a pattern of neglect and a strong indication that respondent was untruthful in his testimony before the hearing panel. No mitigating circumstances were given to explain the conduct.

In *In re Ahern* (1961), 23 Ill. 2d 69, there were six instances in which the respondent neglected or failed to perform the services for which he was paid. The court decided that a censure would be appropriate. The mitigating factors were: the attorney agreed to refund the unearned money, no clients were seriously damaged, respondent's child had been ill and his wife had died, there were no corrupt motives, and his previous legal record was clean.

In *In re Kink* (1982), 92 Ill. 2d 293, the respondent was negligent in the handling of three estates, he was inaccessible to the clients, he made a misrepresentation

to a client and certain clients did not promptly receive the funds to which they were entitled. The court ruled that censure was the appropriate sanction. It noted that the respondent did perform some services for the clients, he had an excellent reputation in the community, he was involved in civic and religious activities and that an office fire disrupted his practice. Also found important was that the respondent had joined a new firm and future instances of neglect seemed unlikely.

In our case, there are a number of mitigating factors which weigh favorably for the respondent. He has practiced for 34 years and no prior charges of professional misconduct have been brought against him. The four events comprising the complaint occurred between 1981 and 1983. The respondent testified that during this period he was having marital difficulties. He also had tax problems resulting from his involvement as a volunteer member of the board of directors of a neighborhood Montessori grade school which had not paid employment taxes. Respondent has a long history of *pro bono* work and civic activity. Also relevant are the hearing panel's findings that the clients were not egregiously harmed and that the respondent had no corrupt motive or moral turpitude, as well as the conclusion that the respondent does not represent a danger to the community.

The purpose of disciplinary proceedings is to safeguard the public from incompetent or unscrupulous attorneys, to maintain integrity of the legal profession and protect the administration of justice from reproach. *In re Rothenberg* (1985), 108 Ill. 2d 313, 323; *In re Levin* (1979), 77 Ill. 2d 205, 211.

Although there are present in this case the mitigating factors noted above, we believe that the purposes of disciplinary proceedings require that the recommendations of the Hearing and Review Boards be accepted. Accord-

ingly, the respondent is suspended from the practice of law for three months.

*Respondent suspended.*

JUSTICE STAMOS took no part in the consideration or decision of this case.