(No. 66769.—

*In re* DAVID MILTON UHLER II, Attorney, Respondent.

*Opinion filed February 2, 1989.—Rehearing denied April 3, 1989.*

CALVO, J., took no part.

John C. O'Malley, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

Roy O. Gulley, of Heyl, Royster, Voelker & Allen, of Springfield, for respondent.

JUSTICE MILLER delivered the opinion of the court:

On October 30, 1986, the Administrator of the Attorney Registration and Disciplinary Commission (the Administrator) filed a one-count complaint charging the respondent, David M. Uhler, with professional misconduct stemming from his conversion of more than $25,000 in client funds. The respondent was charged with the violation of numerous disciplinary rules as a result of his actions. A panel of the Hearing Board found that the respondent had engaged in the misconduct alleged and recommended that he be suspended from the practice of law for 12 months. Both the Administrator and the respondent filed exceptions to the Hearing Board's report and recommendation. The Review Board concurred in the Hearing Board's findings of fact and conclusions of law but recommended that the respondent be disbarred. The respondent has filed exceptions to the report and recommendation of the Review Board. 107 Ill. 2d R. 753(e)(5).

The facts involved in this case are not in dispute. Throughout these proceedings the respondent has acknowledged his misconduct in connection with the client

funds in question. The only issue that remains for our determination is the appropriate sanction to be imposed.

Dr. Jerome H. Krupp of San Antonio, Texas, originally retained the respondent in June 1981 to establish a guardianship for Dr. Krupp's disabled aunt, Mrs. Albertina Staehle. Later that month the respondent, whose office was in Belleville, filed a petition in the circuit court of St. Clair County seeking appointment of a guardian of the person and estate of Mrs. Staehle. Dr. Krupp was subsequently appointed guardian.

In March 1984 Dr. Krupp contacted respondent regarding the sale of a house in Belleville that he owned in joint tenancy with his disabled aunt. On March 13, 1984, at Dr. Krupp's request, the respondent filed a petition in the circuit court of St. Clair County seeking court approval of the sale. About a week later, on March 19, the circuit judge approved the sale but instructed that the "[f]und[s] from [the] sale [are] to be held here in St. Clair County until a complete accounting has been filed, and guardianship reviewed."

On March 23, 1984, the respondent attended the closing for the sale of the property on behalf of Dr. Krupp. At that time the respondent received a check made payable to "David Uhler, Attorney, Agent for Albertina Staehle" for $27,271.07, which represented the gross proceeds from the sale. Dr. Krupp was entitled to receive a net amount of $25,503.07 for his and Mrs. Staehle's interests in the property. The remaining sum, $1,768, represented the costs of the sale, including the respondent's fee of $380. The next day, the respondent endorsed the check and deposited the funds in his client trust account. Before the Hearing Board the respondent explained that he had initially established the trust account for the deposit of funds he received on behalf of his clients, and he maintained that he did not deposit any money of his own in the account. The respondent

claimed an interest in the trust account funds, however, to the extent that he was paid legal fees from sums he received on behalf of his clients.

The trust account balance stood at about $800 when the respondent deposited the check from the house sale. Following the deposit, the respondent wrote checks against the account for some $5,542 in payment of various office and personal expenses. In April 1984 the respondent deposited a total of $20,660 in the trust account and wrote checks totaling $37,277.97 on the account. Again, the checks were made in payment of various business and personal expenses of the respondent.

Early in May 1984 the respondent deposited a total of $104,350 in the trust account and wrote checks totaling $101,047.56 against the account. The respondent had not yet paid Dr. Krupp the net proceeds from the sale of the joint tenancy property. The respondent explains that during that period he was awaiting the receipt of certain documents relating to the inventory of Mrs. Staehle's estate and, in compliance with the circuit court's directive, could not transfer funds out of St. Clair County until the paperwork was completed. The final inventory was filed May 10, 1984. On May 20 the respondent sent Dr. Krupp a check for $25,503.07 drawn on the account. That amount represented the net proceeds from the sale of the real estate. Later, however, the check was returned to Dr. Krupp because of insufficient funds. Dr. Krupp telephoned the respondent to inquire about the matter. The respondent said that he did not understand why the check had not cleared and promised to contact his bank. Later that day, the respondent told Dr. Krupp that he had only $10,400 in available funds. The evidence indicates that the balance in the trust account on May 20, 1984, was $7,613.81.

On June 16, 1984, the respondent sent Dr. Krupp a bank money order for $10,400. Before the Hearing Board, the respondent explained that he had obtained that sum from a separate office account and not from his client trust account. Two months later, on August 16, 1984, the respondent sent Dr. Krupp a check for $4,000 drawn on the trust account. The check was returned to Dr. Krupp because of insufficient funds, however. At the hearing the respondent claimed that the escrow account contained more than $7,000 when the check was written, but he also acknowledged having later written numerous checks totaling more than $7,000, which had depleted the account by the time Dr. Krupp's check was presented for payment.

On October 29, 1984, the Administrator received a complaint from Dr. Krupp concerning the respondent's handling of the proceeds from the sale of the house. By that time Dr. Krupp had obtained different counsel, who had filed a petition in probate court seeking payment of the funds in question. On November 30, 1984, the probate court ordered the respondent to pay Dr. Krupp the balance due him, $15,103.07, within 10 days. The respondent failed to comply with the order.

On December 18, 1984, Dr. Krupp filed suit in the circuit court of St. Clair County to collect the unpaid balance from the respondent. On March 1, 1985, summary judgment was entered against the respondent in the amount of $15,103.07, plus prejudgment interest at the statutory rate, and costs. The respondent paid the claim in a series of installments, and on November 4, 1985, Dr. Krupp's attorney filed a satisfaction of judgment.

The Hearing Board found that the Administrator had established the charges of misconduct by clear and convincing evidence. The Hearing Board noted a number of circumstances in aggravation. Dr. Krupp had been forced to retain new counsel to recover from the respondent

the proceeds of the sale. Moreover, the respondent failed to make restitution for a substantial period of time, and the amount involved was large. The respondent's original misconduct in commingling and converting the client funds was aggravated by the dishonor of two of the respondent's checks to Dr. Krupp. Finally, one of the persons jeopardized by the respondent's misconduct was a disabled adult. The Hearing Board noted in mitigation the testimony of a circuit court judge and two prominent attorneys, who attested to the respondent's favorable reputation in the community. The respondent was 41 years old at the time and had been practicing law in the Belleville area since 1973; he was licensed to practice law in Missouri in 1973 and in Illinois in 1976. The Hearing Board recommended that the respondent be suspended for a period of 12 months.

The Review Board concurred in the Hearing Board's findings of fact and conclusions of law. The Review Board recommended a more severe sanction, however. Relying primarily on this court's opinion in *In re Smith* (1976), 63 Ill. 2d 250, the Review Board concluded that the evidence of the respondent's favorable reputation in his community was insufficient to offset the gravity of his misconduct. The Review Board recommended that the respondent be disbarred.

Attorney disciplinary proceedings are intended to safeguard the public, maintain the integrity of the legal profession, and protect the administration of justice from reproach. (*In re Lenz* (1985), 108 Ill. 2d 445, 450-51; *In re Schelly* (1983), 94 Ill. 2d 234, 246.) Although predictability and fairness require consistency in the imposition of disciplinary sanctions (*In re Saladino* (1978), 71 Ill. 2d 263, 275), the sanction imposed in a particular matter will be determined with reference to the circumstances of the case, including a consideration of the ac-

tual and potential harm posed by the attorney's misconduct (*In re Lewis* (1987), 118 Ill. 2d 357, 364).

Commingling and conversion of client funds are, of course, matters of grave concern. (*In re Young* (1986), 111 Ill. 2d 98, 103.) Such misconduct may be grounds for censure (*In re McLennon* (1982), 93 Ill. 2d 215; *In re Clayter* (1980), 78 Ill. 2d 276), suspension (*In re Cheronis* (1986), 114 Ill. 2d 527; *In re Cutrone* (1986), 112 Ill. 2d 261), or, in the absence of mitigating circumstances, disbarment (*In re Woldman* (1983), 98 Ill. 2d 248; *In re Feldman* (1982), 89 Ill. 2d 7). As we have stated, the Hearing Board recommended that the respondent be suspended for 12 months; the Review Board recommended disbarment. Before this court the Administrator asks that the respondent be disbarred. The respondent believes that a less severe sanction is appropriate, such as censure or a brief period of suspension.

Like the Review Board, the Administrator cites *In re Smith* (1976), 63 Ill. 2d 250, in support of the disbarment of the respondent. In *Smith* the respondent attorney received $69,000 in settlement of the personal injury action of an 18-year-old client. The respondent deposited the entire amount in his own bank account, and later withdrew certain sums in satisfaction of various fees and costs, including his own contingent fee. The client orally agreed that the respondent could retain the money until the client reached the age of 21. Later, however, the client changed his mind and requested payment of the money. The respondent paid the client only small amounts of money, which the respondent and client characterized as interest pending payment of the principal sum. Indeed, the respondent "only initiated payment after a complaint was filed against him, and then the greater portion of the proceeds was only paid after the initial proceeding before the Hearing Board." (*Smith*, 63

Ill. 2d at 255-56.) The attorney in that case was disbarred.

Also relevant here are *In re Lewis* (1987), 118 Ill. 2d 357, and *In re Elias* (1986), 114 Ill. 2d 321. In each of those cases the respondent attorney admitted to acts of conversion of client funds, using the money for business and personal expenses. Moreover, in *Elias*, as in this case, checks tendered to clients were returned unpaid because of insufficient funds. Although restitution was made in both *Lewis* and *Elias*, the clients were deprived of the use of their funds for lengthy periods of time. Both attorneys in those cases were suspended from practice for three-year periods. See also *In re Crane* (1983), 96 Ill. 2d 40 (three-year suspension ordered for attorney who converted client funds belonging to a minor).

In this case, the respondent does not dispute that he commingled and converted more than $25,000 in client funds, using the money for personal and business expenses. The respondent's precarious financial condition aggravated his misconduct. Not only did respondent wrongfully convert his client's funds, he also jeopardized the potential for repayment. Furthermore, the respondent committed the misconduct knowingly. As the evidence demonstrated, on numerous occasions the respondent negotiated checks in excess of the balance of funds available in the account, using the funds to pay business and personal expenses. Such an egregious breach of an attorney's duties cannot be condoned. During the time of these acts, Dr. Krupp's requests for payment of the proceeds of the house sale went unsatisfied. Dr. Krupp ultimately retained new counsel to recover his money, and did not receive full payment until about a year and a half after the money was originally due. Moreover, one of the persons jeopardized by the respondent's misconduct was a disabled adult. These circumstances could warrant disbarment.

The record is not devoid of mitigating circumstances, however. Before the Hearing Board, the respondent presented evidence that he enjoyed a good reputation in his local community. Having finally made full restitution, the respondent expressed remorse for his wrongdoing, and he cooperated fully with the Administrator, the Hearing Board, and the Review Board in the proceedings in this case. We conclude that the appropriate sanction in this case is a three-year suspension from practice.

Finally, we consider the Administrator's motion, which we ordered taken with the case, to strike parts of the respondent's brief. The Administrator argues that the respondent's brief makes reference to some 99 pages of documents that are not of record. The same documents were the subject of a motion to supplement the record before the Review Board, which the Review Board denied. The Review Board properly denied the respondent's request to supplement the record; the documents in question were in the respondent's possession at the time of the hearing before the Hearing Board, yet the respondent made no attempt to introduce them into evidence. The Administrator's motion is granted. We note, moreover, that the documents in question are largely irrelevant to the issue before us. Our decision in this case has been made without reliance on the challenged material.

For the reasons stated, the respondent is suspended from the practice of law for a period of three years.

*Respondent suspended.*

JUSTICE CALVO took no part in the consideration or decision of this case.