(No. 69541.—

*In re* ROBERT LEE MERRIWETHER, JR., Attorney, Respondent.

*Opinion filed September 26, 1990.*

Daniel Drake, of Springfield, for the Administrator of the Attorney Registration and Disciplinary Commission.

Pearson C.J. Bush, of Welch & Bush, P.C., of East St. Louis, for respondent.

JUSTICE RYAN delivered the opinion of the court:

The Administrator of the Attorney Registration and Disciplinary Commission (ARDC) filed a complaint charging the respondent, Robert Lee Merriwether, Jr., with professional misconduct in relation to his conversion of money owed to a State agency. A panel of the Hearing Board found against respondent and recommended that he be censured. The Administrator filed exceptions to the Hearing Board's recommendation. The Review Board agreed with the Hearing Board's findings of fact and conclusions of law, but recommended that respondent be suspended for six months. The respondent and the Administrator filed exceptions with this court pursuant to Supreme Court Rule 753(e) (107 Ill. 2d R. 753(e)).

The findings of fact involved in this case and the conclusions of law that respondent violated the disciplinary code are uncontested. The only issue that remains for our determination is the appropriate sanction to be imposed.

Respondent was licensed to practice law in Illinois in 1978. Since that time he has practiced in the East St. Louis area, and for the past seven years has been a solo practitioner. In the spring of 1984, he agreed to represent Denise Coleman, a public aid recipient, on a contingent fee basis for personal injuries she sustained in an automobile accident involving a taxicab owned by the St. Louis County Cab Company. As a result of the accident, Coleman incurred $4,167.91 in medical expenses, which the Illinois Department of Public Aid paid. In order to negotiate the amount of the Department's lien against Coleman, respondent contacted Thomas Benedick, an assistant Attorney General of the State of Illinois who represented the State's interest concerning the Department's lien. In June 1985, it was agreed that the lien would be reduced to $2,250. Respondent earlier had negotiated a $9,000 settlement of Coleman's claim and on May 31, 1985, deposited the settlement check he received from the company into his attorney-client trust account. On June 24, 1985, Coleman received $3,400, which represented the balance of the funds remaining after respondent kept approximately $3,200 as his fee and withheld $2,250 to pay the Illinois Department of Public Aid's lien.

Respondent did not timely remit to the Department the money owed it, and what he did with these funds constitutes the basis of this disciplinary matter. In June 1985, Benedick filed a petition to adjudicate the lien in the circuit court of St. Clair County along with a proposed order reflecting the agreed-upon settlement. A copy of this was sent to respondent requesting that he sign and return the order. Respondent eventually signed and returned the order in August and on the 16th of that month the agreed order which directed Coleman to pay the lien was entered in the circuit court. Benedick sent a copy of the order to respondent and requested

that he forward the money to the Attorney General's office. After receiving no response to this letter, Benedick sent respondent another correspondence in October reminding him of their prior agreement. Respondent testified that he received both of these letters. On December 12, 1985, Benedick telephoned respondent and requested a release of the lien money. At the hearing, Benedick testified that during this conversation respondent asserted that the case had not yet been settled. Benedick requested respondent to send him a letter to memorialize their conversation. No letter was forthcoming. At the hearing, respondent claimed that he never stated that the case had not been settled. However, the Hearing Board found that respondent had indeed falsely stated that the case was not settled.

Benedick mailed another letter to respondent in October of 1986 again requesting a release of the lien money. Respondent admitted receiving this letter but he did not respond to it. Thereafter, Benedick filed a petition for a rule to show cause why Coleman should not be held in contempt for failing to pay the Department $2,250. On November 19, 1986, an order was entered in the circuit court in conformance with this petition. In January of 1987, another order was entered directing Coleman to appear and show cause why she should not be held in contempt for failing to appear on the show-cause order. A body attachment proceeding was scheduled for February 6, 1987. After failing to appear at the February 6 hearing, Coleman called Benedick to discuss the matter. Subsequently, Coleman signed a sworn affidavit stating that respondent had told her in May 1985 that the lien was paid. Benedick then moved to dismiss the rule to show cause proceeding and an order was entered dismissing the matter. No notice of any of these proceedings was served on respondent, nor did Benedick or Coleman inform him of the proceeding.

The following month, Benedick encountered respondent at the St. Clair County courthouse and initiated a conversation with him regarding the whereabouts of the Department's lien money. At the hearing, Benedick testified that respondent again told him that the Coleman case had not yet been settled. Benedick requested respondent put something in writing in regard to the lien money, and later that day he sent a letter to respondent requesting information about the money. Respondent denied that he made a statement that the case had not been settled. Rather, he testified that he informed Benedick that there was a "problem" with the money. The Hearing Board again found that respondent falsely stated that the case had not yet been settled.

After no response was received from respondent, Benedick sent a letter to the ARDC setting forth the facts of this case. On June 15, 1987, the Administrator filed a one-count complaint against respondent stemming from his nonpayment of the lien and his representations made to Benedick. Respondent replied to the disciplinary charge in October 1987, and at that time he paid $2,250 to the Illinois Department of Public Aid in order to satisfy the Department's lien.

At the hearing only Benedick and respondent testified. The facts were generally uncontested, other than the issue of whether respondent stated that the case had not yet been settled. Respondent's testimony provided further detail regarding his background, legal practice and financial and family situation at the time of the incidents.

Respondent testified that he serviced mostly low income clients in the East St. Louis area. At the time of the events in question, he received retainers from the fire and police board of the city at a salary of $9,600 per year and the State Community College in East St. Louis for $3,600 per year, although he did not regularly re-

ceive payment of these fees. He claims that the neighborhood he lived in was infested with gang violence. His home had been broken into and damaged on a number of occasions by acts of vandalism. In addition, family cars had been both damaged by gunfire and stolen. At approximately the time of the settlement of the Coleman case, on July 16, 1985, gangs drove through the streets of his neighborhood and, with automatic weapons, randomly fired at homes. The respondent's home was apparently extensively damaged. As a result of this incident he decided to move from the neighborhood, and the following month moved with his wife and children to nearby Belleville, although he still maintains his practice in East St. Louis. Respondent contends that his misuse of the funds can, in part, be blamed on this incident, claiming apparently that he needed the money to move his family from the neighborhood. However, the Administrator points out that the balance in respondent's client trust account fell below the amount of the lien on July 2, 1985, and as of July 11, its balance was $458.49.

The respondent's practice has often floundered and at times he has been financially unable to maintain an office and has had to work out of his home. At times, he shared office space in East St. Louis with other attorneys, although he again was sometimes unable to pay all of his business and personal expenses. However, since approximately 1987 his practice has made significant improvements. The department of community development for the city of East St. Louis has retained respondent at a fee of $64,800 per year and his retainers with the fire and police board and the State Community College have each increased so that currently his yearly retainer income is over $100,000.

Respondent also testified that he has been a member of various bar associations when financially able to pay the dues and has participated in continuing legal educa-

tion programs. Respondent is on the board of directors of an organization which assists youths in job training and educational assistance, as well as a group which provides drug education in the East St. Louis area. Respondent testified that he has a good relationship with Coleman and has represented her on certain misdemeanor matters free of charge. Last, he admits that he used the money for personal purposes and understood what he was doing was wrong, but did so anyhow because of his financial predicament. He also admits that he did not always act with professional courtesy to Benedick, although he neither admits nor denies that he lied in relation to the status of the lawsuit.

The Hearing Board ruled that respondent's failure to remit the $2,250 to the Illinois Department of Public Aid and his use of the money for personal purposes, as well as his false representations to Benedick, violated the following provisions of the Code of Professional Responsibility: Rule 1—102(a)(3), which prohibits illegal conduct involving moral turpitude; Rule 1—102(a)(4), which prohibits conduct involving dishonesty, fraud, deceit, or misrepresentation; Rule 1—102(a)(5), which prohibits conduct that is prejudicial to the administration of justice; Rule 7—101(a)(3), which prohibits conduct which may prejudice or damage his client; Rule 7—102(a)(3), which forbids an attorney to conceal or knowingly fail to disclose that which he is required by law to reveal; Rule 7—102(a)(5), which forbids an attorney to knowingly make a false statement of law or fact; and Rule 9—102(a), which requires that an attorney deposit client funds into a separate, identifiable trust account. (107 Ill. 2d Rules 1—102(a)(3) through (a)(5), 7—101(a)(3), 7—102(a)(3), (a)(5), 9—102(a).) The Hearing Board concluded that this conduct brought the courts and legal profession into disrepute. It then recommended that respondent be censured. The Board was persuaded by the fact that in the 10

years since respondent began his practice he had never before been the subject of a disciplinary proceeding and that at the time of his violative conduct he was experiencing financial difficulties beyond his control. Respondent also was providing legal services to people in a community sorely in need of legal representation, and he had provided service in unpopular causes. Moreover, respondent had been an active member in the community and recently his practice had taken a more favorable turn. The Review Board concurred in the findings of fact and conclusions of law; however, it concluded that the appropriate sanction should be a six-month suspension.

The only issue the parties raise is the appropriate sanction. The respondent acknowledges that he has violated the Code but argues that a censure is appropriate. The Administrator contends that the serious nature of the respondent's violations warrants disbarment. First, we concur in the Boards' conclusions that respondent's conduct violates the aforementioned provisions of our disciplinary code and that disciplinary action should be taken. While we give due deference to the recommendations of the Hearing and Review Boards regarding the appropriate sanction, the final responsibility for determining the sanction rests with this court. (*In re D'Angelo* (1988), 126 Ill. 2d 45, 52.) Certainly we strive for consistency in the sanctions imposed and give consideration to cases with similar facts (*In re Harth* (1988), 125 Ill. 2d 281, 288); however, each case is unique and requires an independent evaluation of its relevant circumstances, including factors in aggravation and mitigation (*In re Topper* (1990), 135 Ill. 2d 331, 349).

Respondent commingled and converted funds. We have repeatedly stated that commingling or conversion will not be countenanced. (*In re Young* (1986), 111 Ill. 2d 98, 103; *In re Cohen* (1983), 98 Ill. 2d 133, 139.) Commingling and conversion present a substantial risk of

harm to the client, especially if committed at a time when the attorney is experiencing severe financial difficulties. (*In re Cheronis* (1986), 114 Ill. 2d 527, 536.) The discipline imposed for such acts ranges from censure for a first offense with significant mitigating circumstances (*In re Young* (1986), 111 Ill. 2d 98; *In re McLennon* (1982), 93 Ill. 2d 215; *In re Clayter* (1980), 78 Ill. 2d 276) to disbarment in cases involving a number of violations and lacking mitigating circumstances (*In re Woldman* (1983), 98 Ill. 2d 248; *In re Feldman* (1982), 89 Ill. 2d 7). However, in the majority of the cases a suspension of some duration has been imposed. *In re Cheronis* (1986), 114 Ill. 2d 527 (three-month suspension); *In re Driscoll* (1981), 85 Ill. 2d 312 (six months); *In re Brody* (1976), 65 Ill. 2d 152 (one year); *In re Altman* (1989), 128 Ill. 2d 206 (two years); *In re Cutrone* (1986), 112 Ill. 2d 261 (two years); *In re Webb* (1985), 105 Ill. 2d 360 (two years); *In re Uhler* (1989), 126 Ill. 2d 532 (three years); *In re Lewis* (1987), 118 Ill. 2d 357 (three years).

This case is unusual in that the money involved was client money but it was not owed to the client because the Illinois Department of Public Aid had a lien on it. Coleman received her settlement portion immediately and, therefore, has not been deprived of the use of any funds and has not incurred extra expense as a result of the commingling and conversion. (See *Uhler*, 126 Ill. 2d at 540 (depriving client of the use of funds and requiring him to incur additional expense to recoup the funds are aggravating factors); *Webb*, 105 Ill. 2d at 362.) Coleman, though, did become the subject of a body attachment order and a contempt proceeding was initiated. After Benedick ascertained that there was no valid reason to pursue a remedy against her, he had the proceedings dismissed. Perhaps, as respondent argues, if notice were provided to him, Coleman would not have been troubled. Benedick explained that these proceedings were initiated

a year and a half after he had reached a settlement of the lien and he was unaware whether respondent still represented Coleman. Regardless of the failure of Benedick or Coleman to notify him, it is clear that the situation would not have arisen if respondent had dealt honestly with the funds and with Benedick. Respondent cannot now shift blame to Benedick for his failure to provide notice in a proceeding to enforce an order which had been directed at Coleman. As a result of respondent's misbehavior, this client was at the least inconvenienced and the reputation of the legal profession has been damaged. (*Uhler*, 126 Ill. 2d at 538-39 (actual and potential harm to a client are considered in imposing attorney sanctions); *In re Lewis* (1987), 118 Ill. 2d 357, 362-63 (commingling and conversion places the entire legal profession in disrepute); *In re Driscoll* (1981), 85 Ill. 2d 312, 316.) Moreover, the State was placed at a risk of not receiving reimbursement for services that it provided and for which it was entitled to be compensated. Respondent did pay the Department's lien, but not until he filed an answer to the ARDC complaint. This payment was made over two years after he had the responsibility to do so and it was made without providing interest for the time he used the funds. However, the Department apparently has accepted the payment and has not sought any interest.

Respondent argues that it is a mitigating factor that there was no dishonest motive involved when he converted the funds, but rather it was his financial difficulties that motivated him. A lack of dishonest motive has been recognized as a mitigating factor (*In re Harth* (1988), 125 Ill. 2d 281, 290), and there is no indication that a dishonest motive was involved in this instance. He nevertheless did act dishonestly in his dealings with Benedick in an attempt to cover up his misdeeds. Moreover, an attorney who violates these provisions of the

Code and who is experiencing financial difficulties should not necessarily be treated more leniently than one who so acts while financially secure. It was his financial situation which motivated him and likely motivates other such violations, and this cannot be countenanced or considered as mitigating the violation. (*In re Cutrone* (1986), 112 Ill. 2d 261, 270.) However, it is worthy to note that this attorney is providing a needed service in one of the most impoverished areas in the country and his financial strain, in part, results from his decision to practice there. Respondent has represented the people in that area for over a decade now without any prior disciplinary action, and we are cognizant of the strains that has placed on his practice. For example, respondent testified about the continual gang activity in his neighborhood and how it eventually forced him to move his family and home. We are not implying that the community should be exposed to attorneys who violate our Code of Professional Responsibility. We merely recognize the value of legal service to this community and the financial and emotional stress placed on respondent at the time of this incident.

Relevant mitigating factors include the fact that there have been no other disciplinary matters filed against him. It is also clear from the testimony that respondent is active in his community as a member of civic organizations. He has provided *pro bono* legal services; in fact, the client in this case on two other occasions was provided free legal services in misdemeanor matters. He also has participated in the local bar association and other bar associations when financially able. In addition, he has pursued continuing education programs. Importantly, it is evident that his legal practice has taken significant strides in the past two years and he testified that he is now in a position to run a more professional office with the necessary support staff. Last, respondent

cooperated in these proceedings and expressed remorse for his actions. He admits that he has violated the Code and should be subject to disciplinary action.

We cannot agree, however, that the appropriate sanction should be censure. Granted, there are a number of important similarities to *In re Young* (1986), 111 Ill. 2d 98, *In re McLennon* (1982), 93 Ill. 2d 215, and *In re Clayter* (1980), 78 Ill. 2d 276, wherein we censured attorneys who had converted client funds. The attorneys in each of those cases committed a single act of conversion, they had not been involved in a prior disciplinary proceeding, and they had extensive involvement in community service programs. These factors are present in this case, but there are certain distinctions. First, in each of those cases there was no evidence of dishonest motive. Respondent may not have had a dishonest motive when he converted the funds; nevertheless, he dealt dishonestly with Benedick and told Coleman in 1985 that he had paid the Department lien. Second, the other respondents presented character witnesses who testified to their good reputation. Respondent presented no character witnesses to testify on behalf of his reputation. Last, in each of those cases a *bona fide* dispute explained the delay in remitting the funds—although it did not justify the conversion. In this case no dispute existed surrounding the funds.

We believe that a term of suspension is appropriate. However, a lengthy term is not warranted in light of all the facts in this case. Respondent committed one act of commingling and conversion. There are significant mitigating factors and since the time of the incident he has turned his practice around such that the incident is unlikely to occur again. Respondent, therefore, is suspended from the practice of law for a period of three months.

*Respondent suspended.*